**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| ***ex rel.* JEREMY STEVENS**, | ) | |
| c/o Cornerstone Law Firm | ) | |
| 8350 N. St. Clair Ave, #225 | ) | |
| Kansas City, MO 64151 | ) | |
| | ) | |
| Relator, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 17-cv-00031-GAF |
| **IVXPRESS, INC.,** a Missouri corporation, | ) | |
| 19049 E. Valley View Parkway | ) | |
| Independence, MO 64055 | ) | |
| | ) | |
| **INFUSION EXPRESS OF KANSAS,** | ) | **FILED IN CAMERA AND** |
| **LLC,** a Kansas limited liability company, | ) | **UNDER SEAL** |
| 13340 Metcalf Avenue | ) | |
| Overland Park, KS 66213 | ) | **REQUEST FOR JURY TRIAL** |
| | ) | |
| **DONALD R. PETERSON**, an individual | ) | |
| 19049 E. Valley View Parkway | ) | |
| Independence, MO 64055 | ) | |
| | ) | |
| **LAWRENCE S. COHEN,** an individual, | ) | |
| 8701 Troost Ave | ) | |
| Kansas City, MO 64131 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **ROBERT C. NEWTH, JR.,** an individual, | ) | |
| 9212 Nieman Road | ) | |
| Overland Park, KS 66214 | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW the United States of America, by and through qui tam Relator Jeremy

Stevens ("Relator"), and for its cause of action against Defendants IVXpress, Inc., Infusion

1

Express of Kansas, LLC, Donald R. Peterson, Lawrence S. Cohen, and Robert C. Newth, Jr., alleges as follows:

## Preliminary Statement

1. This is an action to recover damages and civil penalties on behalf of the United States of America for violations of 31 U.S.C. §§ 3729 *et seq*., as amended ("False Claims Act").

2. Under the False Claims Act, it is unlawful for any person to knowingly present or cause to be presented to the United States a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

3. Under the False Claims Act, it is unlawful for any person to knowingly make, use, or cause to be made or used a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B).

4. Under the False Claims Act, it is unlawful for any person to conspire to commit a violation of § 3729(a)(1)(A)-(B).

5. Any person who violates the False Claims Act is liable to the United States for a civil penalty of not less than $5,000 and not more than $10,000 for each such claim, plus three times the amount of damages sustained by the United States because of the false claim or claims.

6. Pursuant to 31 U.S.C. § 3730, Relator seeks to recover damages arising from Defendants' violations of the False Claims Act, namely for damages incurred from the false or fraudulent claims submitted or caused to be submitted by Defendants to Medicare, Medicaid, and TRICARE.

## Parties and Jurisdiction

7. Relator is a citizen of the United States, and currently resides in Smithville, Missouri.

2

8. Relator is a former employee of Defendant Infusion Express of Kansas, LLC ("Infusion Express Kansas").

9. Defendant Infusion Express Kansas is and was at all relevant times a limited liability company active and in good standing in the state of Kansas, with its registered office located at 13340 Metcalf Avenue, Overland Park, Johnson County, Kansas 66213.

10. Defendant IVXpress, Inc. ("IVXpress") is and was at all relevant times a for-profit corporation organized under the laws of Missouri, with its principal place of business located at 19049 East Valley View Parkway, Independence, Jackson County, Missouri 64055.

11. Defendant IVXpress controls the operations of eight infusion centers, each doing business as "Infusion Express", located throughout Missouri, Kansas, California, Illinois, and Pennsylvania.

12. Defendant IVXpress's registered office in Kansas is located at the same location of Infusion Express Kansas: 13340 Metcalf Avenue, Overland Park, Johnson County 66213.

13. Defendant Donald R. Peterson ("Peterson") is the President of IVXPress, and maintains a physical office location at Infusion Express Kansas, 13340 Metcalf Avenue, Overland Park, Johnson County, Kansas 66213.

14. Defendant Lawrence S. Cohen ("Cohen") is a cardiologist licensed to practice medicine in Missouri and Kansas, and whose place of employment is located at 8701 Troost Ave Kansas City, MO 64131.

15. Defendant Robert C. Newth, Jr. ("Newth") is a medical doctor licensed to practice medicine in Kansas and Missouri, and a member of the Board of Directors of Defendant IVXPress.

16. Defendant Infusion Express Kansas is a participating provider of services payable by federally-funded health insurance programs such as Medicare and TRICARE.

17. Defendant Infusion Express Kansas is a participating provider of services payable by the Kansas Medical Assistance Program (KMAP, or "Medicaid"), which is a program partially funded by the federal government.

18. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3730.

19. This court has jurisdiction over the parties to this action pursuant to 31 U.S.C. § 3732.

20. Venue is proper in this court pursuant to 31 U.S.C. § 3732.

21. On or about November 28, 2016, Relator, with direct and independent knowledge of the facts alleged herein, voluntarily disclosed—via telephone—the factual substance of this Complaint to the Office of Inspector General at the U.S. Department of Health and Human Services.

22. This suit is not based upon prior public disclosures of substantially the same allegations or transactions as defined by 31 U.S.C. § 3730(e)(4)(A).

23. To the extent there has been a public disclosure of these allegations unknown to the Relator, Relator is the "original source" of the foregoing information as defined by 31 U.S.C. § 3730(e)(4)(B).

4

## General Allegations Common to All Counts

24. Relator worked in the billing department at Infusion Express Kansas from September 6, 2016, until December 1, 2016.

25. At all times relevant herein, the billing department at Infusion Express Kansas processed payment claims for services rendered at Infusion Express Kansas, Infusion Express in Kansas City, Missouri, and Infusion Express in Independence, Missouri (collectively referred to hereinafter as "Infusion Express").

26. The billing department at Infusion Express Kansas submitted claims for reimbursement to Medicare, Medicaid, and TRICARE for treatment rendered at Infusion Express.

27. Erin Gash was the manager of the billing department at Infusion Express Kansas and all claims submitted for reimbursement were done at her direction or the direction of Connor Newth.

28. Connor Newth[1] worked at Infusion Express Kansas and helped Ms. Gash manage billing operations at Infusion Express Kansas.

29. Defendant Peterson managed the finances, policies, and business practices of Infusion Express and IVXpress from his office at Infusion Express Kansas.

30. During Relator's employment, Infusion Express Kansas employees received their wages from a bank account listed in Defendant IVXpress's name.

31. Defendant IVXpress maintains complete control over the finances, policies, and business practices of Defendant Infusion Express Kansas.

---

[1] Distinguishable from Defendant Robert Newth, Connor Newth's father.

5

32. For the acts alleged herein, Defendant Infusion Express Kansas, its agents, and employees acted with express or implied authority from its principals, Defendants IVXpress and Peterson.

33. Relator's employment in the billing department, directly alongside Ms. Gash and Connor Newth, provided him with firsthand knowledge of the majority of the allegations herein.

34. Relator's ongoing contact with employees at the Infusion Express facilities in Missouri provided him with knowledge of the treatment rendered at those particular locations.

35. Defendant Infusion Express Kansas purchases infusion drugs from third party manufacturers, such as MedPro or Walgreens, and then administers said intravenous drug infusions and injections to patients.

36. After treatment has been rendered to a patient at Infusion Express, Defendant Infusion Express Kansas submits a claim for payment to Medicare, Medicaid, or TRICARE.

37. As of December 1, 2016, Infusion Express had approximately two hundred and twenty (220) active patients insured by Medicare, Medicaid, and TRICARE.

38. During Relator's employment, approximately fifty (50) patients received intravenous infusions each week at Infusion Express for which claims were submitted to Medicare for reimbursement.

39. During Relator's employment, approximately ten (10) patients received intravenous infusions each week at Infusion Express for which claims were submitted to TRICARE for reimbursement.

40. During Relator's employment, approximately three (3) patients received intravenous infusions each week at Infusion Express for which claims were submitted to Medicaid for reimbursement.

6

41. At all times relevant herein, payment claims submitted to Medicare, Medicaid, and TRICARE identified Defendant Cohen as the "Rending Provider" of such medical services for which reimbursement was sought.

42. On each claim submitted for reimbursement, Defendant Cohen provided his signature to represent that he personally provided medical treatment to said patient at Infusion Express.

43. For all times relevant herein, Defendant Cohen did not personally render medical treatment to patients at Infusion Express.

44. When his signature was needed to represent that he personally treated a Medicare, Medicaid, or TRICARE patient, Defendant Cohen provided it to Infusion Express Kansas via fax or email.

45. For each claim submitted for reimbursement from Medicare, Medicaid, and TRICARE, Defendant Newth provided his signature on behalf of Infusion Express to certify that the corresponding treatment was provided in compliance with applicable laws and regulations.

### Fraudulent Use of Defendant Cohen's NPI

46. As a condition of payment for physician services at Infusion Express, Medicare, Medicaid, and TRICARE require that a licensed medical doctor personally render said services in accordance with applicable regulations.

47. Medicare, Medicaid, and TRICARE identify the rendering provider of medical services by using the provider's unique National Provider Identifier (NPI).

48. During Relator's employment, when claims were submitted for reimbursement for services, Defendant Cohen's NPI was used to warrant and represent to Medicare, Medicaid, and TRICARE that such services were personally rendered by Defendant Cohen, including but not limited to the following examples:

7

a. On October 26, 2016, patient R.A. received a Remicade (infliximab) infusion at Infusion Express Kansas, which was billed to Medicare under Defendant Cohen's NPI (1528038387).

b. On October 26, 2016, and November 30, 2016, patient L.H. received Remicade (infliximab) infusions at Infusion Express Kansas, which were billed to Medicare under Defendant Cohen's NPI (1528038387).

c. On November 2, 2016, patient D.S. received an injection of Actemra (tocilizumab) at Infusion Express, which was billed to Medicare on November 4, 2016, under Defendant Cohen's NPI (1528038387) for a total amount of $1,339.54.

d. On November 2, 2016, patient T.S. received an injection of Tysabri (natalizumab) at Infusion Express, which was billed to Medicare on November 4, 2016, under Defendant Cohen's NPI (1528038387) for a total amount of $4,326.12.

e. On November 2, 2016, patient L.W. received two injections of Xolair (omalizumab) at Infusion Express, which was billed to Medicare on November 4, 2016, under Defendant Cohen's NPI (1528038387) for a total amount of $1,558.13.

f. On November 2, 2016, patient V.Z. received an injection of Entyvio (vedolizumab) at Infusion Express, which was billed to Medicare on November 4, 2016, under Defendant Cohen's NPI (1528038387) for a total amount of $4,164.22.

g. On November 9, 2016, patient C.S. received a Remicade (infliximab) infusion at Infusion Express Kansas, which was billed to Medicare under Defendant Cohen's NPI (1528038387).

h. On December 1, 2016, patient C.B. received an intravenous infusion at Infusion Express, which was billed to Medicare under Defendant Cohen's NPI

(1528038387), and for which payment was remitted by Medicare in the amount of $3,598.00.

i. On December 1, 2016, patient G.J. received an intravenous infusion at Infusion Express, which was billed to Medicare under Defendant Cohen's NPI (1528038387), and for which payment was remitted by Medicare in the amount of 2,500.00.

j. On December 1, 2016, patient R.M. received an intravenous infusion at Infusion Express, which was billed to Medicare under Defendant Cohen's NPI (1528038387), and for which payment was remitted by Medicare in the amount of $1,243.00.

k. On December 1, 2016, patient M.M. received an intravenous infusion at Infusion Express, which was billed to Medicare under Defendant Cohen's NPI (1528038387), and for which payment was remitted by Medicare in the amount of $2,500.00

l. On December 1, 2016, patient T.S. received an intravenous infusion at Infusion Express, which was billed to Medicare under Defendant Cohen's NPI (1528038387), and for which payment was remitted by Medicare in the amount of $9,555.00.

m. Medicare remitted payment to Infusion Express in the amount of $1,600.00 for infusion services rendered on December 2, 2016, to patient A.H. Relator alleges that Defendants represented to Medicare that said services were rendered by Defendant Cohen.

9

n. Medicare remitted payment to Infusion Express in the amount of $2,500.00 for infusion services rendered on December 2, 2016, to patient M.K. Relator alleges that Defendants represented to Medicare that said services were rendered by Defendant Cohen.

o. Medicare remitted payment to Infusion Express in the amount of $3,200.00 for infusion services rendered on December 2, 2016, to patient S.S. Relator alleges that Defendants represented to Medicare that said services were rendered by Defendant Cohen.

49. At all times relevant herein, Defendant Cohen's NPI was used as the "default" NPI within the computer system at Infusion Express Kansas.

50. During Relator's employment, including on the dates of October 26, 2016; November 2, 2016; November 9, 2016; November 30, 2016; and December 1, 2016, Defendant Cohen did not render medical services to patients at Infusion Express.

51. During Relator's employment, including the dates of October 26, 2016; November 2, 2016; November 9, 2016; November 30, 2016; and December 1, 2016, Defendant Cohen was not physically present during the administration of infusions to patients at Infusion Express.

52. Upon information and belief, Defendant Cohen did not administer or supervise any infusions at Infusion Express on December 2, 2016.

53. At no time during Relator's employment did Relator witness or observe Defendant Cohen's physical presence at Infusion Express Kansas.

54. It was common knowledge among employees in the billing department that Defendant Cohen did not provide infusions to patients at Infusion Express.

55. General practice nurses administered the vast majority of infusions at Infusion Express.

10

*Kickbacks Provided to Defendant Cohen*

56. Under 42 U.S.C. § 1320a-7b ("Anti-Kickback Statute"), it is unlawful to knowingly and willfully solicit or receive any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program. § 1320a-7b(b)(1).

57. Under the Anti-Kickback Statute, it is unlawful to knowingly and willfully offer or pay any remuneration directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person to arrange for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program. § 1320a-7b(b)(2).

58. Violations of the Anti-Kickback Statute may subject physicians and healthcare entities to liability under the False Claims Act. § 1320a-7b(g).

59. Between September 6, 2016 and December 1, 2016, for each claim submitted to Medicare, Medicaid, and TRICARE, Defendants warranted and represented that such services were rendered by Defendant Cohen.

60. Defendant Cohen affirmatively authorized the use of his NPI at Infusion Express.

61. Between September 6, 2016 and December 1, 2016, Relator opened three envelopes addressed to Defendant Cohen at Infusion Express Kansas.

62. The aforementioned envelopes contained checks made out to Defendant Cohen by Defendants Infusion Express Kansas and/or IVXpress and totaling approximately $30,000.

63. Defendant Cohen received such payment from Defendants Infusion Express Kansas and/or IVXpress in exchange for the use of his NPI at Infusion Express Kansas.

11

64. On more than one occasion, Relator overheard Ms. Gash refer to the compensation received by Defendant Cohen as a "kickback".

*Altering Patients' ICD-10 Diagnostic Codes*

65. ICD-10 diagnostic codes are used each time Defendants submit a claim for payment or reimbursement to Medicare, Medicaid, and TRICARE.

66. ICD-10 diagnostic codes reflect a patient's diagnosis as given by the patient's medical provider before the patient receives treatment at Infusion Express.

67. Whether Medicare, Medicaid, or TRICARE reimburses a particular claim depends on whether the services in question were medically necessary for a patient's particular diagnosis.

68. When Defendants submitted claims to Medicare, Medicaid, and TRICARE, Ms. Gash changed patients' ICD-10 diagnostic codes from a specified diagnosis to an "unspecified" diagnosis.

69. Using an "unspecified" diagnosis, Defendants often received reimbursement for services rendered where they may otherwise be unable to receive such payment had the claim been submitted under its original specified diagnosis.

70. On one particular occasion, Ms. Gash altered the diagnosis of a Medicare patient to "Crohn's disease, unspecified, without complications" (K50.90) because it increased the likelihood that Medicare would reimburse that patient's particular drug regimen, Entyvio (vedolizumab). Entyvio (vedolizumab) is likely to be considered medically necessary for a patient diagnosed with "Crohn's disease, unspecified, without complications."

71. Ms. Gash altered patients' ICD-10 diagnostic codes so as to increase the likelihood of reimbursement from Medicare, Medicaid, and TRICARE.

12

*Billing for Medical Services Not Rendered*

72. During Relator's employment and on a weekly basis, Defendants submitted or caused to be submitted claims to Medicare, Medicaid, and TRICARE for medical services never actually rendered.

73. When a patient missed a scheduled appointment for treatment, Ms. Gash still billed Medicare, Medicaid, and TRICARE as though the patient was seen and administered an infusion.

74. Throughout Relator's employment, patients called the billing department at Infusion Express Kansas and inquired why they had received an explanation of benefits relating to a day when they had not even been present at Infusion Express.

75. When Relator asked Ms. Gash about the foregoing discrepancies, Ms. Gash claimed it was a "system error" but declined to follow up on the issue.

*Creating and Submitting Fraudulent Receipts*

76. During Relator's employment, Connor Newth routinely altered the purchase receipts for drugs reimbursed by Medicare, Medicaid, and TRICARE to make it appear that Infusion Express paid more money out of pocket for certain drugs purchased from the manufacturer.

77. Connor Newth fabricated a receipt for the drug Rituxan (rituximab) to falsely represent to Medicare that Infusion Express Kansas paid approximately $15,000 for the drug, when in actuality the purchase price was approximately $5,750.

78. Connor Newth fabricated purchase receipts for other drugs like Nucala (mepolizumab), Orencia (abatacept), and Prolia (denosumab).

13

79. In attempts to achieve larger payouts, Defendants submitted the aforementioned false receipts in conjunction with claims for reimbursement to Medicare, Medicaid, and TRICARE.

80. During Relator's employment, Ms. Gash directed Relator to fraudulently bill Medicaid $13,000 and $20,000 for the purchase price of Rituxan (rituximab), even though the purchase price was significantly less; Medicaid paid both amounts to Infusion Express in full.

*Defendant Newth's Self-Referral of Services*

81. Under 42 U.S.C. § 1395nn ("the Stark Law"), a physician is prohibited from making referrals to health services payable by Medicare or Medicaid to an entity with which he has a financial relationship, and said entity is prohibited from submitting claims for those referred services.

82. Violations of the Stark Law may subject physicians and healthcare entities to liability under the False Claims Act. *See* 42 C.F.R § 411.353(c)(1).

83. Defendant Newth is a member of the Board of Directors of Defendant IVXpress.

84. Defendant Newth has a financial relationship with Defendants Infusion Express Kansas and/or IVXpress.

85. During Relator's employment, Defendant Newth was physically present at Infusion Express Kansas for approximately one hour per week.

86. During Relator's employment, Defendant Newth—in connection with his practice with Alliance Radiology in Overland Park, Kansas—referred his own patients to receive medical treatment at Infusion Express.

87. When Relator interacted with patients receiving treatment at Infusion Express Kansas, patients would often disclose that they had been referred by Defendant Newth to receive said services at Infusion Express.

88. During Relator's employment, employees in the billing department routinely referenced the fact that Defendant Newth referred his radiology patients to receive services at Infusion Express.

89. At all times relevant, Defendant Newth did not provide designated health services to patients at Infusion Express.

90. The compensation Defendant Newth has received from Defendants Infusion Express Kansas and/or IVXPress exceeds the fair market value of any services he has provided.

91. Defendants submitted claims to Medicare and Medicaid for services provided to patients referred by Defendant Newth.

*False Certification*

92. When a health insurance claim form was submitted to Medicare for payment, Defendants agreed to accept the Medicare-approved amount to satisfy any payment owed by Medicare.

93. Participating providers are prohibited from charging Medicare patients additional fees for services already covered by Medicare, other than the applicable deductible and coinsurance.

94. During Relator's employment, Medicare's payments to Defendants for services rendered were subject to a 2% sequestration.

95. At the direction of Ms. Gash, Infusion Express Kansas routinely overbilled Medicare beneficiaries between $60.00 and $1800.00 per claim—purportedly to offset sequestration.

15

96. During Relator's employment, patient R.W. received multiple Entyvio (vedolizumab) infusions at Infusion Express Kansas and was billed approximately $3,000.00 in excess of her cost-sharing responsibilities as authorized by Medicare.

97. When submitting claims for payment to Medicare, Defendants certified that they were in compliance with all applicable laws, regulations, and contractual provisions between Defendants and Medicare.

98. Because Defendants were overcharging Medicare patients for services rendered, Defendants certifications regarding the same were fraudulent.

<u>**COUNT I**</u>
<u>**Violation of 31 U.S.C. § 3729(a)(1)(A)**</u>
<u>**Submitting False or Fraudulent Claims for Payment**</u>

99. Relator re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

100. Defendants knowingly presented or caused to be submitted false or fraudulent claims to Medicare, Medicaid, and/or TRICARE each time Defendant Cohen's NPI was used for payment or approval of services not actually rendered by Defendant Cohen.

101. Defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim to Medicare, Medicaid, and/or TRICARE each time services were rendered in connection with Defendants' violations of the Anti-Kickback Statute.

102. Defendants knowingly presented or caused to be submitted false or fraudulent claims to Medicare, Medicaid, and/or TRICARE each time a patients' ICD-10 diagnostic code was materially altered in connection with a submitted claim.

16

103. Defendants knowingly presented or caused to be submitted false or fraudulent claims to Medicare, Medicaid, and/or TRICARE when payment was sought for medical services not actually rendered to patients at Infusion Express Kansas.

104. Defendants knowingly presented or caused to be submitted false or fraudulent claims to Medicare, Medicaid, and/or TRICARE each time Connor Newth falsified the purchase receipts of infusion drugs in connection with requests for reimbursement.

105. Defendants knowingly presented or caused to be submitted false or fraudulent claims to Medicare and Medicaid for each service provided in connection with Defendant Newth's self-referrals to his patients through Alliance Radiology.

106. Defendants knowingly presented or caused to be submitted false or fraudulent claims to Medicare for each service rendered in connection with the billing of sequestration charges to patients in violation of Defendants' contractual arrangements with Medicare.

107. With respect to their fraudulent claims, Defendants had actual knowledge of such information, or acted in deliberate ignorance of the truth or falsity of such information, or acted in reckless disregard of the truth or falsity of such information.

108. As a result of their fraudulent acts, Defendants have interminably received reimbursements from Medicare, Medicaid, and/or TRICARE for services not otherwise reimbursable.

109. As a result of the foregoing, Defendants are liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustained because of the act of that Defendant.

110.     Pursuant to 31 U.S.C. § 3730, Relator is entitled to reasonable costs, expenses, and attorneys' fees incurred as a result of this action.

WHEREFORE, Relator requests that the Court enter judgment against Defendants for civil penalties arising from the aforementioned violations of the False Claims Act, including Relator's reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as allowed by the False Claims Act and as the Court deems just and proper.

**COUNT II**
**Violation of 31 U.S.C. § 3729(a)(1)(B)**
**Making False Records or Statements Material to a False or Fraudulent Claim**

111.     Relator re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

112.     Defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim to Medicare, Medicaid, and/or TRICARE each time Defendant Cohen's NPI was used for payment or approval of services not actually rendered by Defendant Cohen.

113.     Defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim to Medicare, Medicaid, and/or TRICARE each time services were rendered in connection with Defendants' violations of the Anti-Kickback Statute.

114.     Defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim to Medicare, Medicaid, and/or TRICARE each time a patients' ICD-10 diagnostic code was materially altered in connection with a submitted claim.

115. Defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim to Medicare, Medicaid, and/or TRICARE each time payment was sought for medical services not actually rendered to patients at Infusion Express.

116. Defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim to Medicare, Medicaid, and/or TRICARE each time Connor Newth falsified the purchase receipts of infusion drugs in connection with a request for reimbursement.

117. Defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim to Medicare and Medicaid for each service rendered in connection with Defendant Newth's self-referrals to his patients through Alliance Radiology.

118. Defendants knowingly presented or caused to be submitted false or fraudulent claims to Medicare for each service rendered in connection with the billing of sequestration charges to patients in violation of Defendants' contractual arrangements with Medicare.

119. With respect to their fraudulent records and statements, Defendants had actual knowledge of such information, or acted in deliberate ignorance of the truth or falsity of such information, or acted in reckless disregard of the truth or falsity of such information.

120. As a result of their fraudulent acts, Defendants have interminably received reimbursements from Medicare, Medicaid, and/or TRICARE for services not otherwise reimbursable.

121. As a result of the foregoing, each Defendant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as

19

adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustained because of the act of that Defendant.

122.     Pursuant to 31 U.S.C. § 3730, Relator is entitled to reasonable costs, expenses, and attorneys' fees incurred as a result of this action.

WHEREFORE, Relator requests that the Court enter judgment against Defendants for civil penalties arising from the aforementioned violations of the False Claims Act, including Relator's reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as allowed by the False Claims Act and as the Court deems just and proper.

**COUNT III**
**Violation of 31 U.S.C. § 3729(a)(1)(C)**
**Conspiracy to Commit a Violation of the False Claims Act**

123.     Relator re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

124.     Prior to and during Relator's employment at Infusion Express Kansas, Defendants conspired to commit violations of the False Claims Act.

125.     Defendants conspired to knowingly present or cause to be present false claims for payment to Medicare, Medicaid, and/or TRICARE.

126.     Defendants conspired to knowingly make, use, or cause to be made or used a false record or statement material to a fraudulent claim submitted to Medicare, Medicaid, and TRICARE.

127.     As a result of the foregoing, each Defendant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as

adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustained because of the act of that Defendant.

128.     Pursuant to 31 U.S.C. § 3730, Relator is entitled to reasonable costs, expenses, and attorneys' fees incurred as a result of this action.

WHEREFORE, Relator requests that the Court enter judgment against Defendants for civil penalties arising from the aforementioned violations of the False Claims Act, including Relator's reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as allowed by the False Claims Act and as the Court deems just and proper.

## Demand for Jury Trial and Designation of Place of Trial

Relator requests a trial by jury in the United States District Court for the Western District of Missouri on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

CORNERSTONE LAW FIRM

By: /s/ Joshua P. Wunderlich
     Joshua P. Wunderlich MO BAR 64254
     j.wunderlich@cornerstonefirm.com
     8350 N. St. Clair Ave. Suite 225
     Kansas City, Missouri 64151
     Telephone       (816) 581-4040
     Facsimile       (816) 741-8889
     ATTORNEYS FOR RELATOR

21

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 23<u>rd</u> day of <u>January</u>, <u>2017</u>, a true and correct copy of the foregoing *Complaint for Damages*, along with a true and correct copy of Relator's *Disclosure Statement*, was served via certified mail addressed to:

U.S. Attorney's Office
Attn: Civil-process clerk
Charles Evans Whittaker Courthouse, Room 5510
400 East 9th Street
Kansas City, MO 64106

*and*

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

/s/ Joshua P. Wunderlich
Attorney for Relator